## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO.   24-20041-CR-ROSENBERG/REINHART

**UNITED STATES OF AMERICA**

**vs.**

**DARNELL JULIO MENDEZ,**

**Defendant.**

_____/

### PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and

**DARNELL JULIO MENDEZ** (hereinafter referred to as the "defendant") enter into the

following agreement:

1.   The defendant agrees to plead guilty to the following Counts charged within the

Indictment:

    a.   COUNT ONE (1) Conspiracy to Distribute a Controlled Substance, and that death
resulted from the use of such substance, in violation of Title 21, United States Code,
Section 841(a)(1) and (b)(1)(B);

    b.   COUNT TWO (2) Distribution of a Controlled Substance, and that death resulted from
the use of such substance, in violation of Title 21, United States Code, Section
841(a)(1) and Title 18, United States Code, Section 2;

    c.   COUNT THREE (3) Possession with Intent to Distribute a Controlled Substance, in
violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States
Code, Section 2; and



    d.   COUNT FIVE (5) SIX 6 Possession of a Firearm by a Prohibited Person, in violation of Title
18, United States Code, Section 922(g)(1).

1

2.   In exchange for the defendant's guilty plea, this Office agrees to seek dismissal of Count FOUR (4) Possession of a Firearm in Furtherance of a Drug Trafficking Crime, in violation of Title 18, United States Code, Section 924(c), at sentencing.

3.   The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines").   The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered.   The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines.   The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range.   Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offenses identified in paragraph one and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

4.   As to COUNT ONE (1) and COUNT TWO (2) of the Indictment, the defendant understands and acknowledges that the Court must impose a minimum term of imprisonment of twenty (20) years in prison and may impose a statutory maximum term of life imprisonment,

2

followed by a minimum term of three (3) years and up to a maximum term of life of supervised release.   The Court may also impose a fine of up to $1,000,000.00.

5.   As to COUNT THREE (3) of the Indictment, the defendant understands and acknowledges that the Court may impose a term of up to twenty (20) years' imprisonment, followed by a minimum term of three (3) years and up to a maximum term of life of supervised release.   The Court may also impose a fine of up to $1,000,000.00.

6.   As to COUNT ~~FIVE (5)~~ **SIX 6** of the Indictment, the defendant understands and acknowledges that the Court may impose a term of up to fifteen (15) years' imprisonment, followed by a maximum term of up to three (3) years of supervised release.   The Court may also impose a fine of up to $250,000.00.

7.   The defendant further understands and acknowledges that, pursuant to Title 18, United States Code, Section 3584, these sentences of imprisonment may be run consecutively as to all Counts of the Indictment.

8.   The defendant further understands and acknowledges that, in addition to any sentence imposed pursuant to this agreement, a special assessment in the amount of $100.00 will be imposed as to each Count for a total amount of $400.00.   The defendant agrees that any special assessment imposed shall be paid at the time of sentencing. If a defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

9.   The United States agrees to not file a sentencing enhancement, pursuant to Title 21, United States Code, Section 851 which, if filed, would raise the minimum-mandatory term of imprisonment to life in prison.

3

10.   This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background.   Subject only to the express terms of any agreed-upon sentencing recommendations contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

11.   This Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offenses, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility. If at the time of sentencing the defendant's offense level is determined to be 16 or greater, this Office will file a motion requesting an additional one level decrease pursuant to Section 3E1.1(b) of the Sentencing Guidelines, stating that the defendant has assisted authorities in the investigation or prosecution of the defendant's own misconduct by timely notifying authorities of the defendant's intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently. This Office, however, will not be required to make this motion and recommendation if the defendant: (1) fails or refuses to make a full, accurate and complete disclosure to the probation office of the circumstances surrounding the relevant offense conduct; (2) is found to have misrepresented facts to the government prior to entering into this plea agreement; (3) commits any misconduct after entering into this plea agreement, including but not limited to committing a state or federal offense, violating any term of release, or making false statements or misrepresentations to any governmental entity or official;

4

or (4) attempts to withdraw his guilty plea, after a finding has been made by the Court that such guilty plea was knowingly and voluntarily entered.

12. This Office and the defendant agree that, although not binding on the probation office or the Court, the defendant will recommend that the Court impose a sentence of twenty-five (25) years' imprisonment, and this Office will recommend that the Court impose a sentence of thirty (30) years' imprisonment.

13. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, this Office, or the probation office, is a prediction, not a promise, and is not binding on this Office, the probation office or the Court. The defendant understands further that any recommendation that this Office makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph two (2) above, that the defendant may not withdraw his plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, this Office, or a recommendation made jointly by the defendant and this Office.

14. The defendant agrees, in an individual and any other capacity, to forfeit to the United States, voluntarily and immediately, any right, title, and interest to any property constituting, or derived from, any proceeds, directly or indirectly, as a result of such violation, and property that was used or intended to be used, in any manner or part, to commit or facilitate the commission of such violation, pursuant to Title 21, United States Code, Section 853(a)(1-(2); and any firearm and ammunition involved in or used in the commission of such offense, pursuant to Title 18, United

5

States Code, Section 924(d)(1). In addition, the defendant agrees to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p). The property subject to forfeiture includes, but is not limited to:

a. a forfeiture money judgment in the sum of $11,930.00 in U.S. currency, which sum represents the value of the property subject to forfeiture;

b. directly forfeitable property, including, but not limited to: 2020 Dodge Challenger SRT Hellcat Redeye, VIN 2C3CDZL90LH117534 seized on March 6, 2024; and

c. substitute property, including, but not limited to, 14K White Gold Diamond Rivera Necklace with "Shy" Diamond Pendant and four Assorted Designer Handbags and Wallet seized on March 6, 2024.

15. The defendant also agrees to fully and truthfully disclose the existence, nature and location of all assets in which the defendant has or had any direct or indirect financial interest or control, and any assets involved in the offenses of conviction. The defendant agrees to take all steps requested by the United States for the recovery and forfeiture of all assets identified by the United States as subject to forfeiture. This includes, but is not limited to, the timely delivery upon request of all necessary and appropriate documentation to deliver good and marketable title, consenting to all orders of forfeiture, and not contesting or impeding in any way with any criminal, civil or administrative forfeiture proceeding concerning the forfeiture.

16. The defendant further agrees that forfeiture is independent of any assessment, fine, cost, restitution, or penalty that may be imposed by the Court. The defendant knowingly and voluntarily agrees to waive all constitutional, legal, and equitable defenses to the forfeiture, including excessive fines under the Eighth Amendment to the United States Constitution. In addition, the defendant agrees to waive: any applicable time limits for administrative or judicial forfeiture proceedings, the requirements of Fed. R. Crim. P. 32.2 and 43(a), and any appeal of the

forfeiture.

17.   The defendant is aware that Title 18, United States Code, Section 3742 and Title 28, United States Code, Section 1291 afford the defendant the right to appeal the sentence imposed in this case.   Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Sections 3742 and 1291 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or an upward variance from the advisory guideline range that the Court establishes at sentencing.   The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b) and Title 28, United States Code, Section 1291.   However, if the United States appeals the defendant's sentence pursuant to Sections 3742(b) and 1291, the defendant shall be released from the above waiver of appellate rights.   By signing this agreement, the defendant acknowledges that the defendant has discussed the appeal waiver set forth in this agreement with the defendant's attorney.   The defendant further agrees, together with this Office, to request that the Court enter a specific finding that the defendant's waiver of his right to appeal

the sentence imposed in this case was knowing and voluntary.

18. This is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 7/24/24                    By: _____
                                      ADAM C. McMICHAEL
                                      ASSISTANT UNITED STATES ATTORNEY

Date: 7/24/24                    By: _____
                                      SHANNON O'SHEA DARSCH
                                      ASSISTANT UNITED STATES ATTORNEY

Date: 7 | 10 | 24                By: _____
                                      SCOTT BERRY
                                      ASSISTANT FEDERAL PUBLIC DEFENDER

Date: 7-24-24                    By: _____
                                      DARNELL JULIO MENDEZ
                                      DEFENDANT

8

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO.   24-20041-CR-ROSENBERG/REINHART**

**UNITED STATES OF AMERICA**

**vs.**

**DARNELL JULIO MENDEZ,**

**Defendant.**

_____/

**FACTUAL BASIS IN SUPPORT OF GUILTY PLEA**

The United States of America and Defendant DARNELL JULIO MENDEZ (hereinafter "Defendant") agree that had this case proceeded to trial, the United States would have proven the following elements and facts beyond a reasonable doubt as to the following Counts of the Indictment, charging the Defendant with Count One (1), Conspiracy to Distribute a Controlled Substance, and that death resulted from the use of such substance, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(B), and 846; Count Two (2), Distribution of a Controlled Substance, and that death resulted from the use of such substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C), and Title 18, United States Code, Section 2; Count Three (3), Possession with Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1) and (b)(1)(C), and Title 18, United States Code, Section 2; and Count ~~Five (5)~~ SIX 6, Possession of a Firearm by a Prohibited Person, in violation of Title 18, United States Code, Section 922(g)(1).

**Elements of Counts One (1), Conspiracy to Distribute a Controlled Substance**

| **First**: | Two or more people in some way agreed to try to accomplish a shared and unlawful plan, the object of which was to distribute a controlled substance; |
|---|---|
| **Second**: | The Defendant knew the unlawful purpose of the plan and willfully joined in it; |

**Third:**     The controlled substance involved 40 grams or more of a mixture and substance containing a detectable amount of fentanyl; and

**Fourth:**     Death resulted from the use of the fentanyl.

### Elements of Count Two (2), Distribution of a Controlled Substance

**First**:     Defendant knowingly possessed a controlled substance;

**Second**:     Defendant distributed the controlled substance;

**Third**:     The controlled substance was a mixture and substance containing a detectable amount of fentanyl; and

**Fourth:**     Death resulted from the use of the fentanyl.

### Elements of Count Three (3), Possession with Intent to Distribute of a Controlled Substance

**First**:     Defendant knowingly possessed a controlled substance;

**Second**:     Defendant intended to distribute the controlled substance; and

**Third**:     The controlled substance was a mixture and substance containing a detectable amount of fentanyl.

### Elements of Count Five (5) [SIX], Possession of a Firearm by a Prohibited Person

**First**:     Defendant knowingly possessed a firearm in or affecting interstate or foreign commerce;

**Second**:     Before possessing the firearm, Defendant had been convicted of a felony – a crime punishable by imprisonment for more than one year; and

**Third**:     Defendant knew he had been previously convicted of a felony.

### Facts

1.  On March 31, 2022, the mother of a 10-month-old baby called 911 and reported that her child was having problems breathing and was unresponsive. The mother made the call from a shopping plaza parking lot just outside the city limits of Boynton Beach, Florida. The fire

2

department responded to the call and transported the baby to Bethesda Hospital in Boynton Beach. Several days later, on April 1, 2022, the baby was taken to Joe DiMaggio's Children Hospital in Hollywood, Florida. The baby had no brain activity or nerve response. On April 5, 2022, the baby was removed from life support, and passed away.

2.   An autopsy was conducted by the Palm Beach County Medical Examiner's Office on April 6, 2022. It was determined that the baby's cause of death was fluorofentanyl and fentanyl intoxication. Her manner of death was homicide. Toxicology testing was performed as part of the examination which revealed fluorofentanyl, fentanyl, norfentanyl, and naloxone in her blood system. The autopsy determined that the baby's death was due to ingestion of illicit drugs.

3.   During a search of the apartment where the baby lived, law enforcement discovered an empty gelatin capsule with residue. The empty capsule was located on a tray which was lying on top of the bed inside of the master bedroom. Officers also located an empty gelatin capsule floating inside a toilet. The capsule with the residue was seized and subsequently analyzed by the Palm Beach County Sheriff's Office Chemistry Unit. Testing revealed that the residue was positive for para-fluorofentanyl and fentanyl—the same substances determined to have killed the baby. Investigation determined that the baby's mother and father were both drug addicts and had been abusing fentanyl regularly.

4.   As part of the investigation of the baby's death, law enforcement seized the baby's mother's cellphone and conducted a forensic analysis of the cellphone.   The extraction of the mother's cellphone included the mother sending a video of the baby in distress to the co-defendant, Samantha Hana Yi, a/k/a "China" (hereinafter "Yi"), on March 31, 2022, the same day the baby ingested fentanyl.   The forensic extraction further revealed that on March 31, 2022, texts and calls were made to Yi from the mother, a return call and text from Yi , including a text

from Yi stating: "Am here," and location data of the mother at a mobile home park in Lake Worth, which is associated with Yi's mother's house.

5.    Additionally, text communications between the baby's mother and Yi show Yi defendant distributed fentanyl to the baby's mother during the time period leading up to the baby's death and that Yi was the mother's only source of supply for fentanyl.

6.    Specifically, on March 30, 2022, the day before the baby ingested fentanyl, the baby's mother purchased fentanyl from Yi—the same substance that caused the baby's death. According to the forensic extraction report of the mother's phone, the mother called Yi, and Yi answered the mother's call.   The mother then left her apartment and she travelled to Lantana Road.   During this time, Yi called the mother twice while the mother was travelling in her vehicle.   The series of calls and location information of the mother's phone showed the mother met Yi near a Dollar Tree in the Lantana area. Additionally, a search warrant for Yi's cellular location information placed Yi in the area of the Dollar Tree when the mother was there.    A license plate reader also showed the mother's vehicle travelling away from the Dollar Tree, after meeting Yi.

7.    As part of the investigation, law enforcement met with the mother.    The mother informed law enforcement that Yi and the defendant were the mother's only sources of supply for fentanyl capsules from January 2022 until March 2022.   The mother purchased fentanyl from the defendant and Yi multiple times per week.   The mother met the defendant and Yi to purchase fentanyl capsules.    The mother texted or called Yi to arrange the amount she would purchase, and Yi directed the mother where to meet.   The mother met Yi at various locations, including Yi's mother's mobile home in Lake Worth, Florida, a parking lot of the Dollar Tree near Lantana Road, and other locations.   When the mother met with Yi, the mother had the baby with her in

the car seat.   When Yi arrived, she would walk to the mother's vehicle to sell her fentanyl capsules.   Yi would be in the car with the defendant.   After purchasing the fentanyl from Yi, she would then give the money to the defendant. The defendant and Yi were a package deal, as they distributed fentanyl together.

8.     Subsequently, law enforcement continued to investigate the defendant and Yi by conducting surveillance at Yi's mother's mobile home.   Law enforcement observed the defendant and Yi conducting hand-to-hand exchanges with individuals.

9.     Thereafter, law enforcement conducted an undercover investigation of the defendant and Yi.   During the investigation, undercover officers purchased a total weight of approximately 136 grams of fentanyl from the defendant and Yi between December 2022 and December 2023. The defendant and Yi received $11,930.00 in U.S. currency from the undercover officers during the controlled purchases and used various vehicles during the transactions, including a 2020 Dodge Challenger SRT Hellcat Redeye, VIN 2C3CDZL90LH117534, which was seized on March 6, 2024.

10.    On March 6, 2024, law enforcement arrested the defendant and Yi pursuant to federal arrest warrants and executed a search of their residence pursuant to a federal search warrant.   The defendant's and Yi's residence consisted of two floors.   Yi was on the first floor of the kitchen in front of the sink laying down. In the sink, a bag of white powder with a spoon was thrown down the garbage disposal.   Beneath the large bag were numerous empty capsules used for packaging.   The bag of white powder was seized and subsequently analyzed by the Drug Enforcement Administration Laboratory ("DEA Lab").   Testing revealed that the substance was positive for fentanyl.

11.    Furthermore, law enforcement seized a purse containing a revolver from the kitchen

5

cabinet.  The purse also contained filled capsules.  Testing of the capsules by the DEA Lab revealed the capsules tested positive for fentanyl.  The revolver and fentanyl capsules were within arms' reach of Yi when law enforcement entered the defendant's and Yi's residence.

12.   The defendant was on the second floor of the residence when law enforcement entered their residence.   The second floor contained a bedroom where numerous guns were found.  The defendant's phone was next to the guns.   There were a total of thirteen (13) firearms in an open plastic container. Some of the firearms were loaded.

13.   In a post-*Miranda* interview, Yi admitted that she and the defendant are drug dealers and are a package.   Yi further acknowledged knowing the mother of the baby and the father of the baby.

14.   While meeting with law enforcement during the investigation, Yi admitted that she sold fentanyl to the mother, and the fentanyl came from the defendant.  The defendant cut, capped, and packaged the fentanyl, and the defendant set the prices of the fentanyl capsules.  The defendant and Yi would then meet customers at various locations.   When Yi and the defendant arrived at the locations, they worked together.   Yi would walk far away from the vehicle she and the defendant arrived in, while the defendant stayed inside the vehicle, and Yi would then distribute fentanyl to their customers.   The defendant knew the baby's father and sold fentanyl to him every other day.   The mother then started calling the defendant's number, but the defendant gave Yi's number to the mother, so the mother could call Yi directly.   The mother then contacted Yi to purchase fentanyl for both the baby's mother and father.   After calling Yi to purchase fentanyl, the defendant and Yi would arrive at various locations to sell fentanyl to the mother.   When Yi and the defendant arrived at a location to meet the mother, Yi took fentanyl from the defendant, walked far away from the vehicle they both arrived in, and then Yi sold the

fentanyl to the mother.    The mother had the baby with her.    After the transactions, Yi gave the defendant the money she received from the sale.

15.    Prior to March 6, 2024, the defendant was adjudicated guilty of the following felony offense, in the Circuit Court, Fifteenth Judicial Circuit, in and for Palm Beach County, Florida that is, a crime punishable under Florida law by more than one year in prison: (i) Case No. 502016CF000642AXXXMB – Possession of Heroin with Intent to Sell.    Prior to March 6, 2024, the defendant knew that he had been convicted of the above felony.

16.    Special Agent Vincent Rubbo from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") examined the following firearms:

(i)      one (1) Palmetto State Armory, PA-15, 5.56x45 rifle,
(ii)     one (1) Maverick Arms (Mossberg), Model 88, 12-Gauge shotgun,
(iii)    one (1) Carl Walther, PPS, .40 S&W pistol,
(iv)     one (1) Smith & Wesson, Model 10-5, .38 Special revolver,
(v)      one (1) North American Arms, NAA-22M, .22 revolver,
(vi)     one (1) Taurus International Mfg. (Brazil), Model 85, .38 Special revolver,
(vii)    one (1) Glock Inc., 42, .380 Auto pistol,
(viii)   one (1) Beretta, 92FS, 9mm pistol,
(ix)     one (1) Kel-Tec, PLR-16, 5.56 pistol,
(x)      one (1) FN Herstal, FNS-9, 9mm pistol,
(xi)     one (1) Ruger, Mark II, .22 pistol,
(xii)    one (1) Sig Sauer, P365, 9mm pistol,
(xiii)   one (1) Glock GMBH, 26, 9mm pistol, and
(xiv)    one (1) Smith & Wesson, Bodyguard 380 (BG380), .380 pistol.

Special Agent Rubbo determined, based upon his expert training and experience, that the firearms had been manufactured or shipped outside the State of Florida, thus having travelled in interstate

or foreign commerce before coming into the possession of the defendant.

17. All events having occurred in the Southern District of Florida and elsewhere.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 7/24/24

By: _____
ADAM McMICHAEL
ASSISTANT UNITED STATES ATTORNEY

Date: 7/24/24

By: _____
SHANNON O'SHEA DARSCH
ASSISTANT UNITED STATES ATTORNEY

Date: 7/16/24

By: _____
SCOTT BERRY
ASSISTANT FEDERAL PUBLIC DEFENDER

Date: 7-16-24

By: _____
DARNELL JULIO MENDEZ
DEFENDANT

8