1

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-20041-CR-ROSENBERG/REINHART(s)

UNITED STATES OF AMERICA

vs.

**SAMANTHA HANA YI,**
   a/k/a "China,
   a/k/a "Gina,"

                              Defendant.
_____/

## PLEA AGREEMENT

The United States Attorney's Office for the Southern District of Florida ("this Office") and **SAMANTHA HANA YI**, a/k/a "China," a/k/a "Gina," (hereinafter referred to as the "defendant") enter into the following agreement:

1. The defendant agrees to plead guilty to the following Counts charged within the Superseding Indictment:

   a. COUNT ONE (1) Conspiracy to Distribute a Controlled Substance Resulting in Death, in violation of Title 21, United States Code, Sections 846 and (b)(1)(B)(vi);

   b. COUNT TWO (2) Distribution of a Controlled Substance Resulting in Death, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C);

   c. COUNT EIGHTEEN (18) Possession with Intent to Distribute a Controlled Substance, in violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(C) and (b)(1)(D); and

   d. COUNT TWENTY (20) Possession of a Firearm by a Prohibited Person, in violation of Title 18, United States Code, Section 922(g)(1);

2

2. In exchange for the defendant's guilty plea, this Office agrees to seek dismissal of all remaining Counts charged against the defendant as contained in the Superseding Indictment.

3. The defendant is aware that the sentence will be imposed by the Court after considering the advisory Federal Sentencing Guidelines and Policy Statements (hereinafter "Sentencing Guidelines"). The defendant acknowledges and understands that the Court will compute an advisory sentence under the Sentencing Guidelines and that the applicable guidelines will be determined by the Court relying in part on the results of a pre-sentence investigation by the Court's probation office, which investigation will commence after the guilty plea has been entered. The defendant is also aware that, under certain circumstances, the Court may depart from the advisory sentencing guideline range that it has computed, and may raise or lower that advisory sentence under the Sentencing Guidelines. The defendant is further aware and understands that the Court is required to consider the advisory guideline range determined under the Sentencing Guidelines, but is not bound to impose a sentence within that advisory range; the Court is permitted to tailor the ultimate sentence in light of other statutory concerns, and such sentence may be either more severe or less severe than the Sentencing Guidelines' advisory range. Knowing these facts, the defendant understands and acknowledges that the Court has the authority to impose any sentence within and up to the statutory maximum authorized by law for the offenses identified in paragraph one and that the defendant may not withdraw the plea solely as a result of the sentence imposed.

4. As to COUNT ONE (1) and COUNT TWO (2) of the Superseding Indictment, the defendant understands and acknowledges that the Court must impose a minimum term of imprisonment of twenty (20) years and may impose a statutory maximum term of life

3

imprisonment, followed by a minimum term of three (3) years and up to a maximum term of life of supervised release. The Court may also impose a fine of up to $1,000,000.00.

.   As to COUNT EIGHTEEN (18) of the Superseding Indictment, the defendant understands and acknowledges that the Court may impose a term of up to twenty (20) years' imprisonment, followed by a minimum term of three (3) years and up to a maximum term of life of supervised release. The Court may also impose a fine of up to $1,000,000.00.

8. As to COUNT TWENTY (20) of the Superseding Indictment, the Court may impose a term of up to fifteen (15) years' imprisonment, followed by a maximum term of up to three (3) years of supervised release. The Court may also impose a fine of up to $250,000.00.

9. The defendant further understands and acknowledges that, pursuant to Title 18, United States Code, Section 3584, these sentences of imprisonment may be run consecutively as to all Counts of the Superseding Indictment.

10. The defendant further understands and acknowledges that, in addition to any sentence imposed pursuant to this agreement, a special assessment in the amount of $100.00 will be imposed as to each Count for a total amount of $400.00. The defendant agrees that any special assessment imposed shall be paid at the time of sentencing. If a defendant is financially unable to pay the special assessment, the defendant agrees to present evidence to this Office and the Court at the time of sentencing as to the reasons for the defendant's failure to pay.

11. This Office reserves the right to inform the Court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses committed, whether charged or not, as well as concerning the defendant and the defendant's background. Subject only to the express terms of any agreed-upon sentencing recommendations

4

contained in this agreement, this Office further reserves the right to make any recommendation as to the quality and quantity of punishment.

12. This Office agrees that it will recommend at sentencing that the Court reduce by two levels the sentencing guideline level applicable to the defendant's offenses, pursuant to Section 3E1.1(a) of the Sentencing Guidelines, based upon the defendant's recognition and affirmative and timely acceptance of personal responsibility.

13. The defendant is aware that the sentence has not yet been determined by the Court. The defendant also is aware that any estimate of the probable sentencing range or sentence that the defendant may receive, whether that estimate comes from the defendant's attorney, this Office, or the probation office, is a prediction, not a promise, and is not binding on this Office, the probation office or the Court. The defendant understands further that any recommendation that this Office makes to the Court as to sentencing, whether pursuant to this agreement or otherwise, is not binding on the Court and the Court may disregard the recommendation in its entirety. The defendant understands and acknowledges, as previously acknowledged in paragraph 3 above, that the defendant may not withdraw her plea based upon the Court's decision not to accept a sentencing recommendation made by the defendant, this Office, or a recommendation made jointly by the defendant and this Office.

14. The defendant agrees, in an individual and any other capacity, to forfeit to the United States, voluntarily and immediately, any right, title, and interest to any property constituting, or derived from, any proceeds, directly or indirectly, as a result of such violation, and property that was used or intended to be used, in any manner or part, to commit or facilitate the commission of such violation, pursuant to Title 21, United States Code, Section 853(a)(1-(2); and any firearm and

5

ammunition involved in or used in the commission of such offense, pursuant to Title 18, United States Code, Section 924(d)(1). In addition, the defendant agrees to forfeiture of substitute property pursuant to 21 U.S.C. § 853(p). The property subject to forfeiture includes, but is not limited to:

a. a forfeiture money judgment in the sum of $11,930.00 in U.S. currency, which sum represents the value of the property subject to forfeiture;

b. directly forfeitable property, including, but not limited to: 2020 Dodge Challenger SRT Hellcat Redeye, VIN 2C3CDZL90LH117534 seized on March 6, 2024; and

c. substitute property, including, but not limited to, 14K White Gold Diamond Rivera Necklace with "Shy" Diamond Pendant and four Assorted Designer Handbags and Wallet seized on March 6, 2024.

15. The defendant also agrees to fully and truthfully disclose the existence, nature and location of all assets in which the defendant has or had any direct or indirect financial interest or control, and any assets involved in the offenses of conviction. The defendant agrees to take all steps requested by the United States for the recovery and forfeiture of all assets identified by the United States as subject to forfeiture. This includes, but is not limited to, the timely delivery upon request of all necessary and appropriate documentation to deliver good and marketable title, consenting to all orders of forfeiture, and not contesting or impeding in any way with any criminal, civil or administrative forfeiture proceeding concerning the forfeiture.

16. The defendant further agrees that forfeiture is independent of any assessment, fine, cost, restitution, or penalty that may be imposed by the Court. The defendant knowingly and voluntarily agrees to waive all constitutional, legal, and equitable defenses to the forfeiture, including excessive fines under the Eighth Amendment to the United States Constitution. In

addition, the defendant agrees to waive: any applicable time limits for administrative or judicial forfeiture proceedings, the requirements of Fed. R. Crim. P. 32.2 and 43(a), and any appeal of the forfeiture.

17. The defendant is aware that Title 18, United States Code, Section 3742 and Title 28, United States Code, Section 1291 afford the defendant the right to appeal the sentence imposed in this case. Acknowledging this, in exchange for the undertakings made by the United States in this plea agreement, the defendant hereby waives all rights conferred by Sections 3742 and 1291 to appeal any sentence imposed, including any restitution order, or to appeal the manner in which the sentence was imposed, unless the sentence exceeds the maximum permitted by statute or is the result of an upward departure and/or an upward variance from the advisory guideline range that the Court establishes at sentencing. The defendant further understands that nothing in this agreement shall affect the government's right and/or duty to appeal as set forth in Title 18, United States Code, Section 3742(b) and Title 28, United States Code, Section 1291. However, if the United States appeals the defendant's sentence pursuant to Sections 3742(b) and 1291, the defendant shall be released from the above waiver of appellate rights. By signing this agreement, the defendant acknowledges that the defendant has discussed the appeal waiver set forth in this agreement with the defendant's attorney. The defendant further agrees, together with this Office, to request that the Court enter a specific finding that the defendant's waiver of his right to appeal the sentence imposed in this case was knowing and voluntary.

7

18. This is the entire agreement and understanding between this Office and the defendant. There are no other agreements, promises, representations, or understandings.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 9/4/24          By: _____
                          ADAM C. McMICHAEL
                          ASSISTANT UNITED STATES ATTORNEY

Date: 9/4/24          By: _____
                          SHANNON O'SHEA DARSCH
                          ASSISTANT UNITED STATES ATTORNEY

Date: 8/28/24         By: _____
                          IAN GOLDSTEIN
                          ATTORNEY FOR DEFENDANT

Date: 08/28/24        By: _____
                          SAMANTHA HANA YI
                          DEFENDANT

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 24-20041-CR-ROSENBERG/REINHART(s)

UNITED STATES OF AMERICA

vs.

SAMANTHA HANA YI,
    a/k/a "China,"
    a/k/a "Gina,"

                      Defendant.
_____/

## FACTUAL BASIS IN SUPPORT OF GUILTY PLEA

The United States of America and Defendant SAMANTHA HANA YI a/k/a "China," a/k/a "Gina," (hereinafter "Defendant") agree that had this case proceeded to trial, the United States would have proven the following elements and facts beyond a reasonable doubt:

### Elements of Count One (1), Conspiracy to Distribute a Controlled Substance

**First**: Two or more people in some way agreed to try to accomplish a shared and unlawful plan, the object of which was to distribute a controlled substance;

**Second**: The Defendant knew the unlawful purpose of the plan and willfully joined in it;

**Third**: The controlled substance involved 40 grams or more of a mixture and substance containing a detectable amount of fentanyl and fluorofentanyl; and

**Fourth**: Death resulted from the use of the fentanyl and fluorofentanyl.

### Elements of Count Two (2), Distribution of a Controlled Substance

**First**: Defendant knowingly distributed a controlled substance;

**Third**: The controlled substance was a mixture and substance containing a detectable amount of fentanyl and fluorofentanyl; and

**Fourth**: Death resulted from the use of the fentanyl and fluorofentanyl.

### Elements of Count Eighteen (18), Possession with Intent to Distribute of a Controlled Substance

**First**: Defendant knowingly possessed a controlled substance;

**Second**: Defendant intended to distribute the controlled substance; and

**Third**: The controlled substance was a mixture and substance containing a detectable amount of fentanyl, cocaine and marijuana.

### Elements of Count Twenty (20), Possession of a Firearm by a Prohibited Person

**First**: Defendant knowingly, jointly, and constructively possessed a firearm in or affecting interstate or foreign commerce;

**Second**: Before possessing the firearm, Defendant had been convicted of a felony – a crime punishable by imprisonment for more than one year; and

**Third**: Defendant knew she had been previously convicted of a felony, that is, a crime punishable by more than one year in prison.

### Facts

1. On March 31, 2022, the mother of a 10-month-old baby called 911 and reported that her child was having problems breathing and was unresponsive. The mother made the call from a shopping plaza parking lot just outside the city limits of Boynton Beach, Florida. The fire department responded to the call and transported the baby to Bethesda Hospital in Boynton Beach. Several days later, on April 1, 2022, the baby was taken to Joe DiMaggio's Children Hospital in Hollywood, Florida. The baby had no brain activity or nerve response. On April 5, 2022, the baby was removed from life support, and passed away.

2. An autopsy was conducted by the Palm Beach County Medical Examiner's Office on April 6, 2022. It was determined that the baby's cause of death was a result of the use of fluorofentanyl and fentanyl. Her manner of death was homicide. Toxicology testing was performed as part of the examination which revealed fluorofentanyl, fentanyl, norfentanyl, and

naloxone in her blood system. The autopsy determined that but for the ingestion of those illicit drugs, the baby would not have died and was otherwise perfectly healthy.

3. During a search of the apartment where the baby lived, law enforcement discovered an empty gelatin capsule with residue. The empty capsule was located on a tray which was lying on top of the bed inside of the master bedroom. Officers also located an empty gelatin capsule floating inside a toilet. The capsule with the residue was seized and subsequently analyzed by the Palm Beach County Sheriff's Office Chemistry Unit. Testing revealed that the residue was positive for para-fluorofentanyl and fentanyl—the same substances determined to have killed the baby. Investigation determined that the baby's mother and father were both drug addicts and had been abusing fentanyl regularly.

4. As part of the investigation of the baby's death, law enforcement seized the baby' mother's cellphone and conducted a forensic analysis of the cellphone. The extraction of the mother's cellphone included the mother sending a video of the baby in distress to Defendant on March 31, 2022, the same day the baby ingested fentanyl. The forensic extraction further revealed that on March 31, 2022, texts and calls were made to Defendant from the mother, a return call and text from the defendant, including a text from Defendant stating: "Am here," and location data of the mother at a mobile home park in Lake Worth, which is associated with Defendant's mother's house.

5. Additionally, text communications between the baby's mother and Defendant show the defendant distributed fentanyl to the baby's mother during the time period leading up to the baby's death and that Defendant was the mother's only source of supply for fentanyl.

6. Specifically, on March 30, 2022, the day before the baby ingested fentanyl, the baby's mother purchased fentanyl from Defendant—the same substance that caused the baby's death.

3

According to the forensic extraction report of the mother's phone, the mother called Defendant, and Defendant answered the mother's call. The mother then left her apartment and she travelled to Lantana Road. During this time, Defendant called the mother twice while the mother was travelling in her vehicle. The series of calls and location information of the mother's phone showed the mother met Defendant near a Dollar Tree in the Lantana area. Additionally, a search warrant for Defendant's cellular location information placed Defendant in the area of the Dollar Tree when the mother was there. A license plate reader also showed the mother's vehicle travelling away from the Dollar Tree, after meeting the defendant.

7. As part of the investigation, law enforcement met with the mother. The mother informed law enforcement that Defendant and co-defendant Darnell Julio Mendez ("Mendez") were the mother's only sources of supply for fentanyl capsules from January 2022 until March 2022. The mother purchased fentanyl from Defendant and Mendez multiple times per week. The mother met Defendant and Mendez to purchase fentanyl capsules. The mother texted or called Defendant to arrange the amount she would purchase, and Defendant directed the mother where to meet. The mother met Defendant at various locations, including Defendant's mother's mobile home in Lake Worth, Florida, a parking lot of the Dollar Tree near Lantana Road, and other locations. When the mother met with Defendant, the mother had the baby with her in the car seat. When Defendant arrived, she would walk to the mother's vehicle to sell her fentanyl capsules. Mendez would be in the car with Defendant. After purchasing the fentanyl from the defendant, Defendant gave the money to Mendez. Defendant and Mendez were a package deal, as they distributed fentanyl together.

8. Subsequently, law enforcement continued to investigate Defendant and Mendez by conducting surveillance at the defendant's mother's mobile home. Law enforcement observed

Defendant and Mendez conducting hand-to-hand exchanges with individuals.

9. Thereafter, law enforcement conducted an undercover investigation of Defendant and Mendez. During the investigation, undercover officers purchased a total weight of approximately 136 grams of fentanyl from the defendant and Mendez between December 2022 and December 2023. Defendant and Mendez received $11,930.00 in U.S. currency from the undercover officers during the controlled purchases and used various vehicles during the transactions, including a 2020 Dodge Challenger SRT Hellcat Redeye, VIN 2C3CDZL90LH117534, which was seized on March 6, 2024.

10. The following table represents the drug sales conducted by Defendant between December 2022 and December 2023, and as charged in the Superseding Indictment:

| Count | Date | Description |
| --- | --- | --- |
| 3 | 12/22/2022 | Defendant sold 2 grams of marijuana to UC1<br>Defendant introduced herself as "Gina" |
| 4 | 12/27/2022 | Defendant sold 3 caps of Fentanyl to UC1 |
| 5 | 1/4/2023 | Defendant sold 7 caps of Fentanyl to UC1 |
| 6 | 1/10/2023 | Defendant sold 14 caps of Fentanyl, .2 grams of cocaine and marijuana to UC1 |
| 7 | 1/25/2023 | Defendant sold 14 caps of Fentanyl to UC1 |
| 8 | 2/1/2023 | Defendant sold 12 caps and 7 grams of powder Fentanyl to UC1 |
| 9 | 2/9/2023 | Defendant sold 13 caps and 7 grams of powder Fentanyl to UC1 |
| 10 | 2/23/2023 | Defendant sold 13 grams of powder Fentanyl to UC2 |
| 11 | 3/1/2023 | Defendant sold 13 grams of powder Fentanyl to UC2 |
| 12 | 3/8/2023 | Yi sold 14 grams of powder Fentanyl to UC2 |

| Count | Date | Description |
|---|---|---|
| 13 | 3/23/2023 | Defendant sold 20 grams of powder Fentanyl to UC2 |
| 14 | 4/13/2023 | Defendant sold 10 caps of Fentanyl to UC1 |
| 15 | 6/2/2023 | Defendant sold 21 grams of Powder Fentanyl and Fluorofentanyl to UC2 |
| 16 | 7/26/2023 | Defendant sold 25 grams of Powder Fentanyl and Fluorofentanyl to UC2 |
| 17 | 12/12/2023 | Defendant sold 8 caps of Fentanyl to UC1 |

10. On March 6, 2024, law enforcement arrested Defendant and Mendez pursuant to federal arrest warrants and executed a search of their residence pursuant to a federal search warrant. This residence was determined to be used to prepare and store drugs for sale. The defendant's and Mendez's residence consisted of two floors. Defendant was on the first floor of the kitchen in front of the sink laying down. In the sink, a bag of white powder with a spoon was thrown down the garbage disposal. Beneath the large bag were numerous empty capsules used for packaging. The bag of white powder was seized and subsequently analyzed by the Drug Enforcement Administration Laboratory ("DEA Lab"). Testing revealed that the substance was positive for fentanyl.

11. Furthermore, law enforcement seized a LV cross-body bag containing a revolver from the kitchen cabinet. It should be noted that the cross-body bag was observed being worn by Mendez during the investigation. The cross-body also contained filled capsules. Testing of the capsules by the DEA Lab revealed the capsules tested positive for fentanyl. The revolver and fentanyl capsules were within arms' reach of Defendant when law enforcement entered the

defendant's and Mendez's residence.

12. Mendez was on the second floor of the residence when law enforcement entered their residence. The second floor contained a bedroom where numerous guns were found. Mendez's phone was next to the guns. There was a total of thirteen (13) firearms in an open plastic container. Some of the firearms were loaded. All of the firearms and ammunition previously traveled in Interstate and/or Foreign commerce. Additionally, on September 5, 2023, Defendant became a convicted felon in Palm Beach County Case number 2023CF004965AMB based upon her guilty plea to the felony of fleeing and eluding a police officer. As such, the defendant knew of her felony status.

13. In a post-*Miranda* interview, the defendant admitted that she and Mendez are drug dealers and are a package. The defendant further acknowledged knowing the mother of the baby and the father of the baby.

14. All events having occurred in the Southern District of Florida and elsewhere.

MARKENZY LAPOINTE
UNITED STATES ATTORNEY

Date: 9/4/24

By: _____
ADAM McMICHAEL
ASSISTANT UNITED STATES ATTORNEY

Date: 9/4/24

By: _____
SHANNON O'SHEA DARSCH
ASSISTANT UNITED STATES ATTORNEY

Date: 8/28/24

By: _____
IAN GOLDSTEIN
COUNSEL FOR DEFENDANT

Date: 08/28/24

By: _____
SAMANTHA HANA YI
DEFENDANT

8